<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| G.B., | Civil Action No. 19-15117 (SRC) |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**<u>CHESLER, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff G.B. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was no longer disabled under the Social Security Act ("Act"). The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), will affirm the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff was found disabled in November 2004. She received disability payments until November 2014 when the Social Security Administration ("SSA") notified her that it was stopping the payments because her health had improved, and she was able to work. Plaintiff requested review of this decision. Eventually, a hearing was held before Administrative Law Judge Marguerite Toland ("the ALJ"). In August 2018, the ALJ determined that Plaintiff had not been disabled since November 24, 2014. Plaintiff sought review of this decision from the

1

Appeals Council, which denied her request for review. After Plaintiff's request was denied, the ALJ's decision became the Commissioner's final decision, and she filed this appeal.

A claimant's disability benefits may be terminated if the impairment, or impairments, that caused her disability have ceased to exist or are no longer disabling. 42 U.S.C. § 423(f). The Commissioner's regulations provide an eight-step process for determining whether a claimant is still disabled. 20 C.F.R. § 404.1594(f). The process is as follows: (1) the claimant is no longer disabled if she is engaging in substantial gainful employment, (2) the claimant is still disabled if she suffers from a severe impairment or combination of impairments which meets or equals one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), (3) if the claimant does not meet any of the Listings, the ALJ must determine whether there has been medical improvement shown by a decrease in medical severity of the claimant's impairments, (4) if there is medical improvement, the ALJ then considers whether it is related to the claimant's ability to do work by determining whether there has been an increase in the claimant's residual functional capacity ("RFC") based on the impairments that were present during the claimant's most recent favorable medical decision finding she was disabled,[1] (5) if there is no medical improvement, the ALJ considers whether any exceptions to medical improvement apply, (6) if claimant's medical improvement is related to her ability to do work, the ALJ then determines whether the claimant's RFC shows significant limitations on her ability to do work—if all of the claimant's impairments do not significantly limit her ability to do work, she is found to no longer be disabled, (7) if the claimant's RFC significantly limits her ability to do work, the ALJ will then consider whether she is able to any work she has done in the past—if she can perform past

---

[1] The most recent favorable medical decision is also called the comparison point decision or CPD.

2

relevant work, then she is found to be no longer disabled, and (8) if the claimant can no longer perform any past relevant work, the ALJ inquires whether someone of the claimant's RFC, age, education, and past work experience could find other work existing in the national economy—if the ALJ determines there is available work that the claimant could perform, then the claimant is found to no longer be disabled. Id.

     Here, the ALJ followed this eight-step process and concluded that Plaintiff was no longer disabled. At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity through the date of the ALJ's decision. (Tr. 43). Second, the ALJ concluded Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine with radiculopathy, degenerative disc disease of the cervical spine, depressive disorder, left ulnar neuropathy and epicondylitis, chronic headaches, asthma, and obesity. (Tr. 43). But the ALJ determined that none of these impairments, or combinations of impairments, met any of the Listings. (Tr. 43-46). Third, the ALJ found that medical improvement occurred on November 24, 2014. (Tr. 46-47). Fourth, the ALJ concluded that the medical improvement was related to Plaintiff's ability to do work because there had been a decrease in the medical severity of the impairments present at the time of Plaintiff's CPD, thereby increasing her RFC. (Tr. 47-49). Because the ALJ found that medical improvement had occurred, the ALJ did not need to consider any exceptions to medical improvement at step five. At step six, the ALJ found that Plaintiff's current RFC allowed her to perform light, low stress work. (Tr. 50-54). Seventh, the ALJ determined Plaintiff had no past relevant work. (Tr. 54). Finally, at step eight, the ALJ considered Plaintiff's age, education, work experience, and RFC and concluded there were a significant number of jobs in the national economy Plaintiff could perform. (Tr. 55-56). As such,

the ALJ found Plaintiff's disability had ended on the date the medical improvement occurred—November 24, 2014. Plaintiff now appeals the ALJ's determination.

## II.   STANDARD OF REVIEW

On appeal, the Court conducts a plenary review of the legal issues but must accept the ALJ's factual findings as long as there is substantial evidence to support them. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (internal quotation omitted). The substantial evidence standard is a deferential standard of review. Id.

In the context of a termination proceeding, the plaintiff bears the burden of "introduc[ing] evidence that his or her condition remains essentially the same as it was at the time of the earlier determination." Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 308 (3d Cir. 2012) (quoting Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). Once the plaintiff has satisfied her burden, the Commissioner bears the burden of "present[ing] evidence that there has been sufficient improvement in the [plaintiff's] condition to allow the [plaintiff] to undertake gainful activity." Id. (quoting Early, 743 F.3d at 1007). Additionally, the plaintiff, as the party attacking the agency determination, must prove prejudice under the harmless error doctrine. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Under this doctrine, a remand is not required unless the error affected the ultimate outcome of the case. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

## III.   DISCUSSION

Plaintiff mainly alleges (1) that the ALJ's finding of medical improvement is not

4

supported by substantial evidence and (2) that the ALJ's RFC determination was erroneous. The Court takes each argument in turn.

### A. Medical Improvement Findings

Plaintiff argues that the ALJ's finding of medical improvement was erroneous because: (1) the ALJ ignored medical evidence indicating Plaintiff's conditions had not improved; (2) the ALJ improperly discounted some of the medical opinion testimony in the record; and (3) the ALJ assumed Plaintiff had not received mental health treatment. All of her arguments are meritless.

First, Plaintiff argues that there is evidence indicating her physical and mental conditions have not improved. (Pl. Br. at 27-37). However, Plaintiff's identification of evidence that may not support the ALJ's decision amounts to a request that this Court reweigh the evidence considered by the ALJ. This Court may not reweigh the evidence on the record. Rutherford, 399 F.3d at 552; Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014). Rather, this Court only inquires whether the ALJ's decision is supported by substantial evidence. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("Our review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence.").

And here, there is substantial evidence to support the ALJ's decision that Plaintiff's conditions have improved since the CPD. As to her physical impairments, the ALJ's medical improvement finding rested primarily on a reduction of Plaintiff's lumbar spine symptoms. (See Tr. 47). Around the time of the CPD, Plaintiff was experiencing back pain radiating down her left leg with a limited range of motion, and an MRI revealed a herniated disc. (Tr. 374, 386). Plaintiff was also experiencing paralysis on her left side as a result of a stroke and symptoms associated with a trauma injury to her back. (Tr. 118, 388). The ALJ found that these conditions

had improved based on evidence that, during the current period, Plaintiff had a normal gait, no difficulty ambulating, and no weakness. (Tr. 47, 470, 472, 516, 562, 586, 596). Furthermore, an MRI during the current period suggested only a mild bulging disc, as opposed to a herniation, and showed only mild degenerative changes. (Tr. 48, 51, 575-76). Finally, two state agency medical consultants opined that Plaintiff could perform light work with postural and environmental limitations and one of the state agency medical consultants concluded Plaintiff's reduction in symptoms was sufficient to find medical improvement. (Tr. 53, 590-96, 646-49). Taken together, this evidence is "more than a mere scintilla" and enough for a "reasonable mind [to] accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). Therefore, the ALJ's conclusion that Plaintiff's physical impairments had improved is supported by substantial evidence.

There is also substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairments have improved since the CPD. At the time of the CPD, Plaintiff's symptoms included panic attacks, suicidal and homicidal thoughts, and violent outbursts. (Tr. 381). Moreover, a mental examination at the time of the CPD indicated La belle indifference, superficial and rapidly changing emotions, and hair pulling. (Tr. 384). However, during the current period, a mental status examination indicated Plaintiff's demeanor was friendly and cooperative, her thought processes were coherent and goal-directed, and her concentration and attention was relatively intact. (Tr. 49, 643). Further, the ALJ considered and assigned some weight to the opinion of a state agency psychological consultant—Dr. Wieliczko—who found that Plaintiff had only mild to moderate limitations, and that "there is no evidence of psychosis or suicidality, speech is intact, thought processes are coherent/logical [and] goal directed, and

cognitive functioning is reduced yet adequate." (Tr. 53-54, 666). Based on these findings Dr. Wieliczko concluded Plaintiff "can understand, remember and execute simple instructions/tasks in a consistent/reliable way" and "can interact appropriately and adapt to changes in a work related setting." (Tr. 666). Taken together, these findings provide substantial evidence in support of the ALJ's conclusion that Plaintiff's mental impairments had improved such that she could perform simple work.

Next, Plaintiff argues that the ALJ improperly discounted the opinion of another state agency psychological consultant—Dr. Curran—who opined that Plaintiff's mental impairments had not improved. (Pl. Br. at 30-33). This Court may not re-weigh the medical opinions in the record but must determine whether there is substantial evidence to support the ALJ's weighing of those opinions. Roache v. Colvin, 170 F. Supp. 3d 655, 671 (D. Del. 2016). Here, the ALJ considered Dr. Curran's opinion but accorded it little weight because Dr. Curran did not examine Plaintiff and issued her opinion prior to a consultative examination by a state agency psychologist. (Tr. 53). Plaintiff argues that the "timing of [Dr. Curran's] opinion. . . does not undermine the reliability of that medical judgment." (Pl. Br. at 33). But Dr. Curran herself acknowledged that her opinion was based on the limited evidence available in the record at that time. (Tr. 577). Thus, the ALJ explained the reasons for discounting Dr. Curran's opinion, and this Court will not re-weigh that opinion.[2]

---

[2] Plaintiff also appears to argue that the ALJ erred by failing to assign any weight to the findings of another state agency physician who examined Plaintiff—Dr. Resnikoff. (Pl. Br. at 32). However, Dr. Resnikoff did not offer an ultimate opinion as to Plaintiff's functional limitations or medical improvement for the ALJ to weigh. (See Tr. 570-74). And the ALJ adequately considered the results of Dr. Resnikoff's examination of Plaintiff, including her assignment of a GAF score of 50. (See Tr. 53) (discussing Dr. Resnikoff's findings); Watson v. Astrue, No. 08-cv-01858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009) (explaining that a GAF score is "medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability").

Finally, Plaintiff argues the ALJ erred by concluding Plaintiff had not received treatment for her mental impairments without considering Plaintiff's explanation for her failure to get treatment. (Pl. Br. at 29-30). The ALJ's opinion references Plaintiff's failure to seek mental health treatment several times. (See Tr. 47, 48, 53). For example, the ALJ found that Plaintiff's mental impairments had improved since the CPD partly because "she has not received mental health treatment and her primary care physician prescribes her psychotropic medications." (Tr. 47). Yet, at the hearing Plaintiff explained that a psychiatrist she tried to see was not covered by her insurance and the psychiatrists who were covered by her insurance never called her back. (Tr. 99). Plaintiff argues that the ALJ's assumption that she had not received mental health treatment was error in light of this explanation.

Putting aside Plaintiff's explanation for her failure to see a psychiatrist, the Court agrees that the ALJ erred by assuming that Plaintiff had not received any mental health treatment whatsoever. While it may be true that Plaintiff had not received treatment from a mental health specialist in some time, (see Tr. 571), the record indicates, and the ALJ herself acknowledged, that Plaintiff received psychotropic medicine from her primary care physician, (Tr. 47, 577). Thus, because Plaintiff received treatment for depression and other mental health conditions from her primary care physician, the ALJ's conclusion that Plaintiff did not receive mental health treatment at all is not supported by substantial evidence

However, the ALJ's error was harmless here because there is nonetheless substantial evidence to support the ALJ's decision that Plaintiff's mental impairments had improved. Given the other evidence of improvement, the finding that Plaintiff did or did not receive mental health treatment has no consequence. Indeed, as described more fully above, the ALJ's

improvement finding is supported by objective medical findings and evidence in the record. These findings include the opinion of Dr. Wielizcko that Plaintiff had only mild to moderate limitations, (Tr. 53-54, 666), and the results of a mental status examination finding Plaintiff had a friendly demeanor, coherent thought process, and relatively intact concentration, (Tr. 49, 643). As such, the ALJ's erroneous finding that Plaintiff had not received mental health treatment is harmless.

In sum, the ALJ's decision that Plaintiff's physical and mental impairments had improved is supported by substantial evidence. And, even though the ALJ erred by finding Plaintiff had not received mental health treatment, this error was harmless because there was other evidence from which to conclude Plaintiff's mental impairments had improved.

### B.  RFC Determination

The ALJ concluded Plaintiff had the RFC to perform light work with some additional limitations. (Tr. 50). The additional limitations included that Plaintiff could stand/walk up to six hours per day but could only do so for no more than one hour at a time at which point she would need to sit for about five minutes every hour. (Tr. 50). The ALJ also determined that Plaintiff could never climb ladders, ropes, or scaffolds, she could never work at heights, she could only occasionally stoop and kneel, she could never crawl, and she should avoid concentrated exposure to pulmonary irritants, humidity, and temperature extremes. (Tr. 50). Finally, the ALJ concluded that Plaintiff had the RFC to perform low stress work involving simple and routine tasks, with no fast-paced production rates and no strict production quotas and, even then, she would be off task for five percent of the workday (not including breaks) due to her symptoms. (Tr. 50).

Plaintiff argues this RFC determination was erroneous because: (1) the ALJ failed to

consider all of the medical findings and opinions in the record; (2) the ALJ concluded Plaintiff could perform light work but added additional limitations without discussing Plaintiff's ability to perform sedentary work; and (3) the ALJ's hypothetical to the vocational expert did not contain a complete factual basis. All three arguments fail.

First, Plaintiff argues that the ALJ violated Social Security Ruling 96-8p because she failed to properly analyze the opinion evidence in the record when making her RFC determination. (Pl. Br. at 38-39). Social Security Ruling 96-8p states "[t]he RFC assessment must be based on <u>all</u> of the relevant evidence in the case record." SSR 96-8P, 1996 WL 374184 (Jul. 2, 1996). Here, the ALJ's RFC is consistent with SSR 96-8P because it is "accompanied by a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Indeed, the ALJ supported her RFC determination by thoroughly discussing the medical opinion evidence and other medical findings over the course of five pages in her opinion. (Tr. 50-54). Plaintiff merely asserts that the ALJ's analysis was conclusory and that it did not provide adequate reasons for the ALJ's rejection of opinions that conflicted with the RFC findings. (Pl. Br. at 38-39). But Plaintiff does not provide any citations to medical opinions or other evidence that contradict the ALJ's RFC determination. <u>Aeling v. Saul</u>, No. 18-cv-00824, 2020 WL 7768407, at *9 (D.N.J. Dec. 30, 2020) ("The Court will not hunt through the record to find evidence to support Plaintiff's position."); <u>see also</u> <u>Atkins</u> ex rel <u>Atkins v. Comm'r of Soc. Sec.</u>, 810 F. App'x 122, 129 (3d Cir. 2020) ("[J]udges are not like pigs, hunting for truffles buried in the record" (internal quotation omitted)). As such, Plaintiff's argument fails.

Next, Plaintiff argues that the ALJ erred by including additional limitations on Plaintiff's ability to perform light work without considering whether Plaintiff should be assigned an RFC

10

for sedentary work instead. (Pl. Br. at 40-41). The regulations state that light work "requires a good deal of walking or standing" and "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A claimant must be able to do "substantially all of these activities" in order to have the RFC to perform light work. Id. Here, Plaintiff argues the extra limitations imposed by the ALJ, such as the need to sit for five minutes every hour and the conclusion that Plaintiff would be off task for five percent of every workday, indicate that Plaintiff is "unable to perform substantially all of the exertional and nonexertional functions" of light work. (Pl. Br. at 40); (Pl. Reply Br. at 5). Thus, Plaintiff contends, the ALJ should have considered whether Plaintiff had the RFC to perform the lower level of sedentary work and the failure to do so is reversible error. (Pl. Br. at 41).

      Even if the ALJ should have considered assigning Plaintiff an RFC for sedentary work, the error is harmless. Plaintiff's argument is similar to the one offered by the plaintiff in Boone v. Barnhart, 353 F.3d 203 (3d Cir. 2003). There, the ALJ found that the plaintiff could perform a limited range of light work. Id. at 209–10. The plaintiff argued the ALJ committed reversible error by "failing to specify how limited the range of light work that she can perform is and by not addressing whether she is also limited in the range of sedentary work that she can do." Id. at 210. The Third Circuit held this error is not reversible per se but rather harmless error when "the ALJ has received the assistance of a [vocational expert] in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform." Id. Here, the ALJ's hypothetical question to the vocational expert included the more specific limitations that Plaintiff would need to sit for five minutes every hour and that she would be off task for five percent of the workday. (Tr. 104-06). The vocational expert testified that, even

11

given these limitations, there would still be jobs in the national economy Plaintiff could perform. (Tr. 105). Moreover, the vocational expert testified that even someone with an RFC for sedentary work could perform these jobs. (Tr. 106). As such, remand is unnecessary because consideration of whether Plaintiff could perform sedentary work would not change the outcome of the case. See Rutherford, 399 F.3d at 553 ("[R]emand is not required here because it would not affect the outcome of the case.").

Finally, Plaintiff argues the ALJ failed to provide a complete hypothetical to the vocational expert at the hearing. (Pl. Br. at 41). An ALJ's hypothetical must reflect "all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Plaintiff has done no more than list a number of limitations she alleges the ALJ did not consider in her hypothetical. In essence then, Plaintiff's attack on the vocational expert hypothetical repeats her attack on the ALJ's RFC determination. Rutherford, 399 F.3d at 554 n.8 (explaining that arguments that the ALJ failed to recognize certain limitations during the RFC assessment "and so did not convey those limitations to the vocational expert" are "best understood as challenges to the RFC assessment itself"). But the Court has already rejected Plaintiff's challenge to the RFC assessment. And, in attacking the hypothetical to the vocational expert, Plaintiff again fails to identify any medical evidence in the record to support her position. She points to no evidence that the limitations she identified were credibly established and, therefore, deserving of inclusion in the ALJ's hypothetical. See id. at 554–55 (explaining that all of the "credibly established limitations" must be provided to the vocational expert and discussing the procedure for determining when a limitation is credibly established). Even further, it appears from the ALJ's opinion that she in fact did consider a number of the limitations identified by

12

Plaintiff. (See Tr. 47-54) (discussing Plaintiff's radiculopathy, lumbar spine impairment, neck pain, headaches, asthma, and obesity). Thus, Plaintiff's argument that the ALJ's hypothetical was inadequate is meritless.

In all, Plaintiff challenges the ALJ's RFC determination and hypothetical to the vocational expert but the ALJ's analysis accounted for all the limitations credibly established by the record and Plaintiff does not identify any evidence to support her positions. Furthermore, Plaintiff's argument that the ALJ should have considered whether Plaintiff could perform sedentary work is unavailing because any error caused by the ALJ's failure to do so was harmless.

**IV.    CONCLUSION**

For these reasons, the Court finds that the Commissioner's determination is supported by substantial evidence and affirms the Commissioner's decision.

                                                    s/ Stanley R. Chesler
                                        STANLEY R. CHESLER, U.S.D.J.

Dated: December 22, 2021